BOARD OF EDUCATION OF THE BOROUGH OF RIVERTON, IN THE
COUNTY OF BURLINGTON,

*v.*

PETER TAIT et al.

[Submitted April 6th, 1912.  Determined April 25th, 1912.]

1. Liens perfected by stop-notices, served under Mechanics' Lien act
(*3 Comp. Stat. 1910 p. 3290 § 3*)., are payable in the order of priority of
service of notice, and not *pro rata*.

2. Orders made by the contractor of a public school building and filed
with the board of education of the municipality, and claims under notices
served pursuant to Municipal Liens act (*3 Comp. Stat. 1910 p. 3315*)
were entitled to priority in payment from the public building fund over
a claim under a stop-notice subsequently served pursuant to the Me-
chanics' Lien act (*3 Comp. Stat. 1910 p. 3290 § 3*), especially where the
stop-notice was not served until after the maturity date of the. final pay-
ment under the contract.

3. Where a stop-notice under Mechanics' Lien act (*3 Comp. Stat. 1910
p. 3290 § 3*) was not served until after the building was completed and
accepted, and the architect's certificate given, nor until after the date
upon which the final installment fell due according to the contract, it was
not served until the maturity date of the final payment, though the con-
tractor had not complied with his contract obligation to furnish evidence
that all bills had been paid before he demanded his final payment.

Final hearing on bill of interpleader, &c.

The present controversy is to determine the order in which
certain claims against a fund shall be paid. The fund has been
deposited with this court by the board of education of the
borough of Riverton under a bill of interpleader.

The fund in controversy is the last installment of a contract
made by Peter Tait, as building contractor, with the board of
education of the borough of Riverton for the erection of a school
house, and is, in amount $5,389.50. A copy of the contract was
filed in the clerk's office of Burlington county. By the terms of
the contract this installment became due December 31st, 1910,
the building having been completed and accepted on that date.

The several claims against the fund are as follows:

*First.* Claim of William D. Lynch for $1,000.

This claim is under a written order made by the contractor on the board of education in favor of Lynch.

The order bears date September 7th, 1910, and was filed with the board September 16th, 1910.

*Second.* Claim of J. S. Collins & Sons for $3,000.

This claim is under a written order made by the contractor on the board of education in favor of Collins & Sons. The order bears date September 9th, 1910, and was filed with the board September 15th, 1910.

*Third.* Claim of Keystone Fireproofing Company for $360.

This claim is made by claimant as a materialman under the provisions of the act popularly called the Municipal Liens act (*3 Comp. Stat. p. 3315*).

Notice of claim of lien was duly served November 26th, 1910.

*Fourth.* Claim of Chas. Stockholm Lumber Company for $181.11.

This claim is similar to the preceding one. Notice of claim of lien was duly served December 7th, 1910.

*Fifth.* Claim of John F. Robinson & Son for $907.12.

This claim is similar to the two preceding claims.

Notice of claim of lien was duly served December 10th, 1910.

*Sixth.* Claim of Arthur McCarty for $750.

This claim is under a stop-notice served March 20th, 1911, pursuant to the provisions of section 3 of the Mechanics' Lien act (*Comp. Stat. p. 3290*).

Total claims, $6,198.23.

At the time the bill of interpleader was filed each of the three claimants above named who had served notices pursuant to the Municipal Liens act (claimants above numbered three, four and five), had filed bills for the enforcement of their claims pursuant to the procedure specified in that act for that purpose and had fully complied with all of the requirements of that act.

*Mr. Joseph L. Thomas,* for J. S. Collins & Son.

*Mr. Francis D. Weaver,* for Peter Tait.

*Mr. William T. Boyle,* for Keystone Fireproofing Company.

*Mr. Lewis Starr,* for Charles Stockholm Lumber Company.

*Mr. Francis J. Smith,* for John F. Robinson & Son.

*Mr. Joseph Beck Tyler,* for Arthur McCarty.

*Mr. Mahlon Van Booskirk,* for Pensauken Art & B. Company.

LEAMING, V. C.

It will be observed that three classes of claims are here involved: 1. Claims under orders issued by the contractor on the owner; these are first in date of issuance and service. 2. Claims filed under the Municipal Liens act; these are second in date of service. 3. A claim under the stop-notice provisions of the Mechanics' Lien act. This is last in date of service.

It is conceded by the three claimants who claim under the Municipal Liens act that the two claimants who hold orders are entitled to be paid from the fund before their claims can participate. This concession is in accordance with the decisions in *Somers Brick Co.* v. *Souder,* 70 *N. J. Eq.* (*4 Robb.*) *388, 394; S. C., 71 N. J. Eq.* (*1 Buch.*) *759, 762;* and *Cope* v. *C. B. Walton Co., 77 N. J. Eq.* (*7 Buch.*) *512, 517.* The ground of these decisions is that the Municipal Liens act confers no inchoate lien on the fund in favor of laborers or materialmen prior to the service of a notice of claim of lien pursuant to the act; an order by the contractor on the owner is therefore operative as an equitable assignment of the money due or to grow due under the contract to the amount specified in the order as against claims subsequently filed under the act.

It is also conceded by counsel representing the stop-notice claim under the Mechanics' Lien act that the three claims under notices served pursuant to the Municipal Liens act are entitled to be paid from the fund before his stop-notice claim. He claims, however, that his stop-notice entitles him to payment from the fund before the two orders are paid. It is manifestly impossible to give the orders precedence over the municipal liens

claims and to give the latter claims. precedence over the stop-notice claim, and at the same time give the stop-notice claim precedence over the orders. The concession referred to as made by the claimant under the stop-notice appears to be necessary. If it be conceded that the stop-notice provisions of the Mechanics' Lien act can be enforced against public building contracts, it will be observed that in *Slingerland* v. *Binns, 56 N. J. Eq. (11 Dick.) 413, 415,* it is held that the fifth section of that act is operative to create an inchoate lien in favor of laborers and materialmen on the liability of the owner under the contract; but such inchoate lien as there defined is clearly operative, at most, as against advance payments by the owner or orders or assignments made by the contractor. It is not operative against stop-notices of the same class first served (*Bayonne* v. *Williams, 59 N. J. Eq. (14 Dick.) 617*), and there seems to be no foundation for a claim that it would be operative against a prior notice served under the provisions of the Municipal Liens act, for such prior notice under the act last named is effective to create a statutory lien as of its date of service, and it would seem that any lien arising from a subsequent stop-notice would necessarily be subject to the prior consummated statutory lien created by the prior notice. A distribution in full recognition of the rights of the three classes of claims would thus seem to be rendered impossible. A would become entitled to payment before B, and B before C, and C before A.

I am not aware that our court of last resort has been called upon to determine whether the stop-notice provisions of the Mechanics' Lien act are applicable to a contract for the construction of a public building, or whether, if so applicable, such provisions have been superseded and in effect repealed as to public building contracts by the subsequent enactment of the Municipal Liens act. In *Frank* v. *Freeholders of Hudson County, 39 N. J. Law (10 Vr.) 347,* it was held by our supreme court that while a public building could not be subjected to a lien for labor or materials supplied in its construction, the provisions of the third section of the Mechanics' Lien act touching stop-notices were operative to afford the remedy there given, if the contract should be filed by the municipality pursuant to the provisions of

the act. It must be conceded, however, that the dissenting opinion of Mr. Justice Dixon, filed in that case, measurably weakens the value of the case as a precedent, especially to one who finds it difficult to adopt the views expressed in the majority opinion. Subsequent to the decision in *Frank* v. *Freeholders, supra,* our legislature passed the Municipal Liens act, and in *Arzonico* v. *Board of Education of West New York, 75 N. J. Law (46 Vr.)* 21, our supreme court held that the latter act was not operative to repeal the remedy afforded by the third section of the Mechanics' Lien act against public buildings. The opinion filed in that case is based upon the view that the continuation of the remedy afforded by the third section of the Mechanics' Lien act against public building contracts is not inconsistent with the enjoyment of the remedies created by the later act. It has been herein already pointed out that in the present case the rights secured to the claimant under the provisions of the Mechanics' Lien act, if enforced, are operative to render it impossible to award to the claimants under the Municipal Liens act the rights bestowed upon them by the provisions of that act. This circumstance appropriately occasions the observation that *Arzonico* v. *Board of Education, supra,* did not determine that the stop-notice provisions of the Mechanics' Lien act were not superseded by the Municipal Liens act in cases of public improvement in so far as it should be found that the provisions of the former act were in fact inconsistent with the rights conferred by the latter act. Additional force is given to this observation by reference to the original repealing clause of the Municipal Liens act; that clause expressly repealed all inconsistent former legislation, but exempted from the operation of its repealing clause any claim of lien that at that time existed against moneys due under municipal contracts, as did also the unconstitutional similar statute of the preceding year which it replaced.

But conceding, for present purposes, that the stop-notice provisions of the Mechanics' Lien act were originally operative against public building contracts, and that the subsequent enactment of the Municipal Liens act was not operative to supersede or repeal such stop-notice provisions in their application to public

building contracts, even though the rights arising under the stop-notices, if enforced, should be found operative to supersede or defeat the liens, afforded by the Municipal Liens act, a circumstance yet exists in the present case which appears to give to the orders and municipal lien notices the right of priority of payment over the stop-notice. That circumstance is the fact that the stop-notice in this case was served after the maturity date of the final payment under the contract. It has been repeatedly held that the inchoate lien which the provisions of section 5 of the Mechanics' Lien act imparts to stop-notices under that act extends only to the time the liability of the owner matures according to the terms of the contract. *Slingerland* v. *Binns,* 56 *N. J. Eq.* (*11 Dick.*) *413, 415; Donnelly* v. *Johnes,* 58 *N. J. Eq.* (*13 Dick.*) *442, 445; Flaherty* v. *Atlantic Lumber Co.,* 58 *N. J. Eq.* (*13 Dick.*) *467, 469; Smith* v. *Dodge & Bliss Co.,* 59 *N. J. Eq.* (*14 Dick.*) *584, 585; Person* v. *Herring,* 63 *N. J. Law* (*34 Vr.*) *599, 603; Taylor* v. *Reed,* 68 *N. J. Law* (*39 Vr.*) *178; Edge* v. *McClay,* 72 *N. J. Eq.* (*2 Buch.*) *216; Keulper* v. *Reeve,* 79 *N. J. Eq.* (*9 Buch.*) *483; S. C., Ib. 651.* It is contended, however, that the last clause of section 6 of the Mechanics' Lien act, which clause was added by the revision of 1898, is operative to extend the inchoate lien of laborers and materialmen beyond the time the last payment matures and thus afford a preference in favor of a stop-notice served after the maturity of an installment over an order of assignment given at an earlier date. That view is presented with great force in *Luce Mech. L.* (*1910 ed.*) *70, 75;* but to adopt that view at this time, *Taylor* v. *Reed, supra; Edge* v. *McClay, supra,* and *Keulper* v. *Reeve, supra,* all decided since the adoption of the provisions of the statute referred to, must be overruled upon the assumption that section 6 of the Mechanics' Lien act, as amended, was not considered because not discussed in the opinion filed. I cannot think it proper for this court to base so drastic an action upon that uncertain assumption.

But whatever may be the force of the provisions of section 6 of the Mechanics' Lien act, as amended by the revision of 1898, I am unable to reach the conclusion that the section can in any view be deemed effective to give such stop-notice precedence over

a prior notice given by a materialman pursuant to the terms of the Municipal Liens act for material supplied to a public improvement. In 1909 the Municipal Improvement act was amended and the final section as amended was made to read that "all acts and parts of acts inconsistent with the terms of this act are hereby repealed." It has been already pointed out that to give the stop-notice here in question priority of payment over the prior orders, it must be also given priority of payment over the prior notices served under the Municipal Liens act and thus wholly prevent any payment to the holders of the municipal lien notices. To give stop-notices that effect in this case is, therefore, to render the beneficial provisions of the Municipal Liens act ineffective so far as the claim under the stop-notice is concerned; any provision of the Mechanics' Lien act so operative would, in my judgment, be clearly inconsistent with the provisions of the Municipal Liens act, and so far as inconsistent be repealed by the repealing clause of the latter act. As already suggested, this view is not in conflict with *Arzonico* v. *Board of Education,* heretofore referred to. That decision arose on a demurrer to a declaration in an action against the owner, and the single question was whether the stop-notice provisions of the Mechanics' Lien act were wholly repealed as to public improvement contracts by the provisions of the Municipal Liens act. No conflict of claims under the two acts existed in that case. The concluding words of the opinion expressed the extent of the decision as follows: "We find nothing in the remedy provided by the act of 1892 (Municipal Liens act) inconsistent with that given by the third section of the Mechanics' Lien law in cases like the present." The court was not in that case called upon to determine, and did not determine, whether any provision of the Mechanics' Lien act which should be operative, if enforced, to defeat the beneficial operation of the Municipal Liens act, and which should be, to that extent, inconsistent with the provisions of the later act, was repealed.

It is also contended in behalf of the stop-notice claimant that the last installment was not due when the stop-notice was served because of a clause in the contract which obligated the contractor to furnish evidence that all bills had been paid before he could

demand his final payment. The building was completed and accepted and the architect's certificate given January 31st, 1910. The contract clearly treated the final installment as falling due at that time. The mere fact that the contractor could not enforce payment of the installment which then became due until he had supplied certain evidence cannot be regarded as postponing the due date of the contract. But whatever view might be taken as to the due date of the contract the views above expressed touching the provisions of the Mechanics' Lien act in so far as they conflict with the provisions of the Municipal Liens act are controlling.

I am also unable to adopt the views urged in behalf of the stop-notice claimant that a certain letter of recall written by the owner was operative to impair the rights of the holders of one of the orders or that the other order was subject to a condition which destroyed its effect as an equitable assignment, *pro tanto,* of the fund.

I will advise an order directing distribution of the fund by payment of the orders as first in priority, and the notices under the Municipal Liens act in the order of their dates as second. These payments will exhaust the fund.