JOHN C. LLOYD et al., complainants,

*v.*

JOSEPH CONNELLA et al., defendants.

[Submitted January 15th, 1923. Decided January 20th, 1923.]

1. Where the attorney for a corporation which loaned the owner of land funds with which to build, held a power of attorney from the owners to disburse the funds, but had never represented them in any other way, he was not authorized to accept or acknowledge service of stop-notices by mechanics' lien claimants.

2. The rule that section 3 of the Mechanics' Lien act shall be liberally construed in favor of claimants, does not require a construction so liberal as to permit a claimant to ignore its explicit direction, particularly where other claimants have complied with its requirements.

3. Where the first mechanics' lien stop-notice was served on an agent not authorized to receive or accept service for the owner, the subsequent ratification by the owner of the acceptance of service cannot give that claimant any rights as against other claimants who had served stop-notices upon the owner after the service on the agent and before the owner's ratification.

On bill, &c. ·

*Mr. Scott German,* for the Builders' Material Supply Company.

*Mr. Simon L. Fisch* and *Mr. Theodore C. Gottlieb,* for the New York Cornice and Skylight Works.

*Mr. Henry H. Fryling,* for the Harrison Supply Company.

Foster, V. C.

This is an interpleader suit under the Mechanics' Lien act, and the controversy is among the claimants over the fund of $1,529.31 paid into court by complainants.

· Complainants who are tenants in common are the builders and owners who by a contract in writing dated August 11th, 1919, and duly filed, agreed with the defendant Joseph Connella for the erection of certain garage buildings on their property on Warren street, Newark.

To finance this building operation complainants borrowed money from the Prosperity Building and Loan Association, for which Judge Fred G. Stickel, Jr., was the attorney.

Prior to obtaining this loan complainants had no relations with Judge Stickel and he never represented them nor acted for any of them nor for the "Lloyd Estate" as they were known. Acting as attorney for the loan association and incidentally for complainants, under a power of attorney from them, Judge Stickel disbursed and applied the proceeds of the loan in settlement of the payments due under the building contract as they accrued, until trouble arose between the owners and contractor.

While this loan was being handled in the office of Judge Stickel, or of his firm, Stickel & Naughright, the firm had in its employ, Halsey W. Stickel, a brother of Judge Stickel, who attended to most, if not all, the details of the transaction relating to the loan and the disbursement of its proceeds; and when the contractor defaulted in the completion of his contract, the claimant Harrison Supply Company, on December 20th, 1919, served its claim and stop-notice for $966.27, against complainants, addressed to the "Lloyd Estate, care of Fred Stickel," on Halsey W. Stickel, as the attorney, agent or representative of the owners, and duly received from him an acknowledgment of the service of the same. On January 20th, 1920, the claimant Builders' Material Supply Company, duly served its claim and stop-notice for $2,636.75 upon Halsey W. Stickel as the representative of "Frederick G. Stickel, who was disbursing the funds for the construction of the building;" and also upon John C. Lloyd, one of the co-owners; on October 5th, 1920, this claimant also served a like stop-notice on Mrs. Madaline Lloyd Goodrich, another co-owner, and on October 19th, 1920, this claimant served a like stop-notice on Mrs. Caroline L. Strobell, the remaining co-owner.

On February 3d, 1920, the claimant New York Cornice and Skylight Works served its stop-notice for $597.14 on John C. Lloyd, one of the co-owners.

Complainants thereupon filed their bill and paid the balance of $1,529.31 in their hands, due on the contract, into court, and as this fund is insufficient to satisfy these claims which aggregate over $4,100, a controversy among the claimants, on the question of priority, has arisen out of the manner of service and the person upon whom the stop-notices were served.

The question thus presented for determination is, Was the service of the stop-notice of the Harrison Supply Company, the first in time, upon Halsey W. Stickel, a compliance with the provisions of section 3 of the Mechanics' Lien act (*Comp. Stat, p. 3294*), which requires such stop-notice to be served upon the owner, or owners? This claimant contends it was,

because it claims Judge Stickel, or his firm, were acting in the entire transaction as the agents or attorneys of the owners, and that Halsey W. Stickel, as an employe of the firm, attended to all matters relating to this building contract and loan.

The proofs do not support this contention; but on the contrary, they show that Judge Stickel was strictly limited, in his agency for the owners, by the terms of the power of attorney they gave him, and as he had neither the expressed nor implied authority from them to accept or to acknowledge services of stop-notices for them, he was without power to delegate such authority to Halsey W. Stickel, and the record does not show that he ever did so.

The right of the claimants to serve stop-notices affecting the fund rests upon the provisions of section 3 of the act, and it is not unreasonable to ask from the claimants at least some semblance of a compliance with the statutory requirements.

The court of errors and appeals in the case of *McNab Manufacturing Co.* v. *Building Co., 72 N. J. Eq. 929,* held that the provisions of section 3 should be liberally construed in favor of claimants, but this does not require a construction so liberal as to ignore the explicit directions of the statute, particularly where other claimants have actually and literally complied with its requirements.

It is further contended on behalf of this claimant, if the service of its notice upon Halsey W. Stickel, instead of upon the owners, was for this reason defective, that such defect was cured by the owners' ratification of his action, in acknowledging service of the notice. There is no proof of such ratification, unless it can be implied from the allegations of the bill of complaint, to the effect that this claimant, among others, claims some part of the fund, but if there had been an expressed ratification, it could not, under the circumstances, have the effect claimed for it, where, as here, there are other claimants to the fund, with equal rights under the statute, and who have asserted their rights by the service of their

stop-notices, personally, upon the owners, as the statute expressly requires.

My conclusion is that as the service of the stop-notice of this claimant was not made upon the owners as the statute requires, its claim must therefore be disallowed.

The Builders' Material Supply Company, the second claimant in point of time, made a like defective service of its stop-notice upon Halsey W. Stickel, but cured this service by making, at the same time, actual personal service upon one of the co-owners, and later by making personal service of its notice upon the other co-owners. The service upon the first co-owner was made some weeks before similar service of the stop-notice of the remaining claimant was made upon the same co-owner.

The Builders' Material Supply Company is the only claimant whose stop-notice was served "upon the owner or owners," as the statute requires.

The third claimant concedes that the stop-notice of the Builders' Material Supply Company was served prior to the service of its own stop-notice, and because of the like service of its own notice, it does not dispute the claim that service upon one of the co-owners was service upon all, and such dispute, under the circumstances, would be futile, because eventually service of the second claimant's notice was made personally upon all the owners; and I will therefore advise that the fund be paid on account of the claim of the Builders' Material Supply Company.