This is an interpleader suit under the Mechanics' Lien act. The defendant Sloan, by contract in writing and duly filed, agreed to build a house for the complainant for $12,000. He defaulted on his contract and complainant was obliged to complete the work, after which there remained a balance of $827.71 due Sloan under the contract. Numerous stop-notices were given to complainant by mechanics, subcontractors *Page 302 
and materialmen having claims aggregating $3,663.37. Hence this suit. The sole question here involved is as to the priority between the claim of the defendant Newark Parquet Flooring Company and that of Heidritter Lumber Company. No question as to the priority of other claims is involved. The testimony shows that the Newark Parquet Flooring Company, on May 14th, 1925, served a stop-notice on the architect employed by the complainant, Vogel, who was the owner of the building involved; that at that time the complainant, Vogel, was in Massachusetts, where he remained until May 29th, 1925. The officer of the claimant who served the notice on the architect was unable to locate the complainant, and, on inquiry, found that he was out of the state, and thereupon delivered the stop-notice to the architect as mentioned above. Immediately upon Dr. Vogel's return the architect delivered the stop-notice to him. On the same day, or within a day or two thereafter, the officer of the claimant who gave the notice to the architect called on the complainant personally, told him of the stop-notice and asked if he had received it. The complainant replied that he had received it from the architect and that he understood its purport. The stop-notice of the complainant Heidritter Lumber Company was served upon the complainant on June 3d 1925. It is clear, therefore, and, in fact, undisputed, that the stop-notice of the claimant Newark Parquet Flooring Company came into the actual possession of the complainant at least two days prior to the service of the stop-notice by the claimant Heidritter Lumber Company.
The solicitor of Heidritter Lumber Company insists that the claim of that company is entitled to priority because the stop-notice of Newark Parquet Flooring Company was not properly served within the meaning of section 3 of the Mechanics' Lien act (Comp. Stat. p. 3294), and cites, in support of his argument, the case of Lloyd v. Connella, 94 N.J. Eq. 322. It is admitted that the stop-notice of Heidritter Lumber Company was properly served.
The contention of counsel for Heidritter Lumber Company is that section 3 of the Mechanics' Lien act requires service *Page 303 
of a stop-notice upon the owner personally, or, at least, upon an agent of the owner authorized to accept such service, and that the architect here was not the agent of the owner and had no authority to accept service for him. That portion of section 3 of the Mechanics' Lien act pertinent to this inquiry reads as follows:
"And it shall be the duty of such * * * materialman or subcontractor to give notice in writing to the owner or owners
of such building * * * and of the amount due to him or them and so demanded."
Liens perfected under this section are payable in the order of priority of service of notice, and not pro rata. Board ofEducation v. Tait, 80 N.J. Eq. 94; affirmed, 81 N.J. Eq. 161.
The purpose of section 3 of the Mechanics' Lien act, above cited, I apprehend, is to secure to materialmen, subcontractors,c., payment of their bills so far as possible upon default by the contractor.
In McNab Harlan Manufacturing Co. v. Paterson BuildingCo., 72 N.J. Eq. 929, the court of errors and appeals held that while the "mechanics' lien laws are, as a rule, to be construed strictly against the claimant and in favor of the owner of the land in so far as they require the owner to pay a debt that he did not contract and for a consideration that he may have already paid to the contractor," * * * "no such strict construction should be given to the provisions of the third section of our Mechanics' Lien law." In other words, that section of the act should be liberally construed in favor of the stop-notice claimant in order to effectuate the object of the statute so long as it does not work a hardship on the owner.
In the case of Lloyd v. Connella, supra, the facts were that the stop-notice was served upon an employe of an attorney who, as attorney for a building and loan association mortgagee, was disbursing the mortgage funds, and, incidentally, for the purpose of such disbursement, represented the owner-mortgagor. Vice-Chancellor Foster held in that case that *Page 304 
the person upon whom the stop-notice was served was not the agent of the owner, and that, therefore, the service was void as against other claimants who had subsequently properly served the stop-notice upon the owner.
That case is easily distinguishable from the case at bar. The facts here are entirely different, and I do not understand the court to there have held that service of the notice must necessarily be a personal service. It will be noted that the act requires the materialmen, c., "to give notice in writing." How such notice is to be given is not specified, nor does the statute say that the notice shall be "served." There is, in my judgment, a difference in the "giving of notice" and the "serving of notice," as understood in legal parlance. Notice may be "given" in many different ways, and, after notice is received, it matters not how it is "given;" but the service of notice requires greater formality, depending in almost every case upon the requirements of some particular statute; and, indeed, it seems to be conceded by all parties in this case that technical "service" of a stop-notice is not required, as the first stop-notice from any claimant received by the owner was received by him by mail while he was in Massachusetts, and it is conceded that this stop-notice entitled the claimant to priority over all other claimants. However, it will be noted that in the instant case the stop-notice was handed to the architect in charge of the building by an officer of the claimant during the absence of the owner from this state and after the claimant had searched for the owner and been unable to find him. The notice was given to the owner by the architect immediately upon his return, and, at least, four days prior to service of the stop-notice of the Heidritter Lumber Company. At least two days before the service of the Heidritter Lumber Company notice, the officer who served the Newark Parquet Flooring Company notice on the architect personally saw the owner, evidently to make sure that the stop-notice had come to the owner's hands, and the owner then acknowledged to the claimant the receipt of such notice. If the giving of notice by mail is sufficient (and, as above stated, this is conceded), then why *Page 305 
not service by special messenger? Here, the least that can be said is that the service was by messenger, namely, the architect. It is unnecessary, in the view I take of the matter, for me to decide whether or not the architect was the agent of the claimant or the owner, or of either. The fact is that the owner had actual written notice of the claim of the Newark Parquet Flooring Company four days before he received notice of the claim of Heidritter Lumber Company. Unquestionably if, when the claimant saw the owner after his return from Massachusetts, he had said to him, "return the notice to me that I may serve it upon you," and this request had been forthwith complied with and the claimant had immediately thereafter handed the notice back to the owner without more, such notice would have been good, and, if this is so, why require the claimant to go through with that useless formality? What more effectual notice of the claim could have been accomplished? The real test, in my judgment, is whether or not the owner has received written notice of the claim. Undoubtedly, the owner here had actual written notice of the claim of Newark Parquet Flooring Company several days before the notice of the Heidritter Lumber Company. I am, therefore, of the opinion that the claim of Newark Parquet Flooring Company is entitled to priority over the claim of Heidritter Lumber Company, and I will advise a decree in accordance with these conclusions. *Page 306 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 307